**DAVIS WRIGHT TREMAINE LLP**
865 S. FIGUEROA ST.
SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
TELEPHONE (213) 633-6800
FAX (213) 633-6899

ALONZO WICKERS IV (State Bar No. 169454)
alonzowickers@dwt.com

Attorneys for Defendants
WENNER MEDIA LLC and
HYBRID PROMOTIONS LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| F.E.A. MERCHANDISING, INC.; LIVE NATION MERCHANDISE, INC.; BRAVADO INTERNATIONAL GROUP MERCHANDISING SERVICES, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> WENNER MEDIA LLC AND HYBRID PROMOTIONS LLC d/b/a HYBRID APPAREL, <br><br> Defendants. | Case No. **CV09-06474 VBF** (RZx) <br><br> **DEFENDANTS WENNER MEDIA LLC AND HYBRID PROMOTIONS LLC'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST, SECOND AND THIRD CAUSES OF ACTION OF COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> [Fed. R. Civ. P. 12(b)(6)] <br><br> Date:        December 14, 2009 <br> Time:        1:30 p.m. <br><br> Courtroom:   9 <br><br> [Request for Judicial Notice and Declarations of Monica Pa and John Gruber with Exhibits A-Z; Notice of Lodging; and Corporate Disclosure Statements Filed Concurrently] <br><br> Action Filed:  Sept. 4, 2009 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Monday, December 14, 2009, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Valerie Baker Fairbank of the United States District Court for the Central District of California, in Courtroom 9 of the Spring Street Courthouse, located at 312 N. Spring Street, Los Angeles, California 90012, defendants Wenner Media LLC, the owner and publisher of *Rolling Stone* magazine ("Rolling Stone") and Hybrid Promotions LLC d/b/a "Hybrid Apparel" will and hereby do move to dismiss the first cause of action for false advertising pursuant to 15 U.S.C. § 1125(a), the second cause of action for trademark infringement pursuant to 15 U.S.C. § 1114, and the third cause of action for trademark dilution pursuant to 15 U.S.C. § 1125(c) (collectively, the "Trademark Claims"), set forth in the complaint of plaintiffs FEA Merchandising, Inc., Live Nation Merchandise, Inc., and Bravado International Group Merchandising Services, Inc., pursuant to Federal Rule of Civil Procedure 12(b)(6).  This Motion is made on the following grounds:

1.      Plaintiffs, who allegedly have the exclusive merchandising rights to license items bearing the names and likeness of four musical celebrities (Nirvana, Run-D.M.C., Kurt Cobain and Beyoncé (collectively, the "Artists")), have brought Trademark Claims based on t-shirts, tote bags, and posters that feature reproductions of famous and historic *Rolling Stone* magazine covers (the "Covers") that are sold as part of a promotional subscription program (the "RS Promotional Items").  The Trademark Claims are barred by the First Amendment because the RS Promotional Items are expressive non-commercial speech, and are fully protected by the First Amendment.  Rolling Stone, moreover, has the constitutional right to promote its magazine by reprinting its famous Covers in other formats, even if sold for profit.

2.      Plaintiffs' Trademark Claims are also barred by the First Amendment because defendants' use of plaintiffs' trademarks had artistic relevance to the Covers,

and the RS Promotional Items did not explicitly mislead the public about any endorsement of these items by any person featured on the Covers.

3.     Plaintiffs' Trademark Claims are barred by the nominative fair use defense because any uses of the Artists' trademarks on the RS Promotional Items are *bona fide* uses for non-trademark purposes that do not convey sponsorship or endorsement.

4.     Finally, plaintiffs fail to properly plead each of their purported Trademark Claims.  Specifically:

(a)     Plaintiffs' first claim for false advertising fails to allege, as required, any competitive injury.

(b)     Plaintiffs' second claim for trademark infringement fails to identify any registered trademarks owned by the Artists that allegedly have been used by Rolling Stone.

(c)     Plaintiffs' third claim for trademark dilution fails to allege any actual dilution, and could not, since the RS Promotional Items are not commercial speech and the reproduction of *Rolling Stone* covers is entirely descriptive and accurate.

This Motion is based on this Notice; on the attached Memorandum of Points and Authorities; on the concurrently-filed Request for Judicial Notice and Declarations of John Gruber and Monica Pa with Exhibits A-Z; on any other matters of which this Court may take judicial notice; on all pleadings, files and records in this action; and on such other argument as may be received by this Court at the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on October 19, 2009.  Pa Decl. ¶ 4.

MOTION TO DISMISS
DWT 13465533V9 3770077-000047

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

For each of these reasons, defendants respectfully request that the Court grant this Motion and dismiss plaintiffs' Trademark Claims without leave to amend.

DATED:  October 30, 2009

DAVIS WRIGHT TREMAINE LLP

ALONZO WICKERS IV

By:_____/s/_____
                Alonzo Wickers IV

Attorneys for Defendants
WENNER MEDIA LLC and
HYBRID PROMOTIONS LLC

3

MOTION TO DISMISS
DWT 13465533V9 3770077-000047

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT/PRELIMINARY STATEMENT ........................... 1

FACTS AND PROCEDURAL HISTORY ......................................................... 3

    The Parties ........................................................................................................ 3

    The Covers ....................................................................................................... 4

    The RS Promotional Items .............................................................................. 5

    The Complaint .................................................................................................. 6

ARGUMENT ............................................................................................................ 7

I.     THE ISSUES PRESENTED IN THIS MOTION SHOULD BE
       DECIDED AT THE PLEADING STAGE .......................................... 7

II.    PLAINTIFFS' TRADEMARK CLAIMS SHOULD BE
       DISMISSED ......................................................................................... 8

    A.    RS Promotional Items Are Entitled To Full First
          Amendment Protection .......................................................... 10

        1.    The RS Promotional Items Are Expressive
             Speech ..................................................................... 10

        2.    The *Rolling Stone's* Covers Were Republished
             To Promote The Magazine's Quality And
             Content .................................................................... 12

    B.    The First Amendment Bars Plaintiffs' Trademark
          Claims Because Any Use Of The Artists' Names
          And Likenesses Had Artistic Relevance To The
          Covers, And The RS Promotional Items Do Not
          Explicitly Mislead As To Source Or Origin ........................... 15

    C.    Rolling Stone's Use Of The Artist's Name And
          Likeness Was Not A Trademark Use; Any Use Was
          Protected By The Nominative Fair Use Defense ..................... 19

    D.    Plaintiffs' Trademark Claims Fail For Additional
          Independent Reasons .............................................................. 22

        1.    Plaintiffs' Infringement Claim Should Be
             Dismissed ................................................................ 22

        2.    Plaintiffs' False Advertising Claim Should Be
             Dismissed ................................................................ 22

        3.    Plaintiffs' Dilution Claim Should Be
             Dismissed ................................................................ 23

MOTION TO DISMISS
DWT 13465533V9 3770077-000047

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1

CONCLUSION ..................................................................................... 25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS
DWT 13465533V9 3770077-000047

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

**Cases**                                                                      <u>Page</u>

*Abdul-Jabbar v. GMC*,
    85 F.3d 407 (9th Cir. 1996)........................................................................ 18, 21

*Abrego v. Dow Chemical Co.*,
    443 F.3d 676 (9th Cir. 2006)............................................................................... 7

*Armstrong v. Eagle Rock Entertainment, Inc.*,
    Case No. 09-Cv-11704 (E.D. Mich. Sept. 10, 2009) .................................... 17, 19

*Ashcroft v. Iqbal*,
    -- U.S. --, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).......................................... 7

*Astaire v. Best Film & Video Corp.*,
    116 F.3d 1297 (9th Cir. 1997)........................................................................... 14

*Ayres v. City of Chicago*,
    125 F.3d 1010 (7th Cir. 1997)........................................................................... 11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ............................... 3, 7

*Booth v. Curtis Publishing Company*,
    15 A.D.2d 343, 223 N.Y.S.2d 737 (N.Y. App. Div. 1962), *aff'd*, 11 N.Y.2d
    907, 228 N.Y.S.2d 468 (N.Y. 1962) ................................................................. 13

*Bosley Medical Inst, Inc. v. Kremer*,
    403 F.3d 672 (9th Cir. 2005).............................................................................. 9

*Brown v. Electronic Arts, Inc.*,
    Case No. 2:09-cv-01598-MMM (C.D. Cal. Sept. 23, 2009) ......................... 7, 17

*Burnett v. Twentieth Century Fox Film Corp.*,
    491 F. Supp. 2d 962 (C.D. Cal. 2007)........................................................ 7, 17, 24

*Cairns v. Franklin Mint, Co.*,
    107 F. Supp. 2d 1212 (C.D. Cal. 2000)............................................................... 9

*Cairns v. Franklin Mint Co.*,
    292 F.3d 1139 (9th Cir. 2002)................................................................. 19, 20, 21

iii

MOTION TO DISMISS
DWT 13465533V9 3770077-000047

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*, 447 U.S. 557, 100 S.Ct. 2343, 65 L. Ed. 2d 341 (1980) ........................ 10

*Cohen v. California*,
    403 U.S. 15, 91 S. Ct. 1780, 29 L. Ed .2d 284 (1971) ...................................... 11

*Comedy III Prods. v. Gary Saderup, Inc.*,
    25 Cal. 4th 387, 106 Cal. Rptr. 2d 126 (2001)...................................... 10, 11, 12

*Comedy III Prods. v. New Line Cinema*,
    200 F.3d 593 (9th Cir. 2000)........................................................................... 17

*E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.*,
    547 F.3d 1095 (9th Cir. 2008)........................................................ 2, 15, 16, 17

*Estate of Presley v. Russen*,
    513 F. Supp. 1339 (D.N.J. 1981) ....................................................................... 9

*ETW Corp. v. Jireh Publishing, Inc.*,
    332 F.3d 915 (6th Cir. 2003)................................................................... *passim*

*Facenda v. N.F.L. Films, Inc.*,
    542 F.3d 1007 (3d Cir. 2008)........................................................................... 10

*Felix the Cat Productions v. New Line Cinema*,
    54 U.S.P.Q.2d 1856 (C.D. Cal. Apr. 28, 2000) ............................................... 17

*Hoepker v. Kruger*,
    200 F. Supp. 2d 340 (S.D.N.Y. 2002)............................................................... 14

*Ileto v. Glock*,
    349 F.3d 1191 (9th Cir. 2003)............................................................................ 7

*Jack Russell Terrier Network of Northern Ca. v. American Kennel Club, Inc.*,
    407 F.3d 1027 (9th Cir. 2005)......................................................................... 23

*Kent v. Universal Studios*,
    Case No. CV 08-2704 GAF (C.D. Cal. Aug. 15, 2008) ............................... 8, 16

*Kournikova v. General Media Communications Inc.*,
    278 F. Supp. 2d 1111 (C.D. Cal. 2003)........................................................... 23

*Lawrence v. A.S. Abell Co.*,
    299 Md. 697, 475 A.2d 448 (Md. 1984) ........................................................... 13

iv

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Lerman v. Flynt Distributing Co., Inc.*,
    745 F.2d 123 (2d Cir. 1984)............................................................................ 13

*Mattel v. MCA Records*,
    296 F.3d 894 (9th Cir. 2002)................................................ 15, 16, 17, 24

*Metrano v. Twentieth Century Fox*,
    Case No. CV 08-6314 PSG (C.D. Cal. July 16, 2009) ................................ 8, 16

*MGIC Indem. Corp. v. Weisman*,
    803 F.2d 500 (9th Cir. 1986).......................................................................... 7

*Montana v. San Jose Mercury News, Inc.*,
    34 Cal. App. 4th 790, 40 Cal. Rptr. 2d 639 (Cal. Ct. App. 6 Dist. 1995).... 12, 13

*Moseley v. V Secret Catalogue, Inc.*,
    537 U.S. 418, 123 S. Ct. 1115, 155 L .Ed. 2d 1 (2003) .................................. 24

*Namath v. Sports Illustrated*,
    48 A.D.2d 487, 371 N.Y.S.2d 10 (N.Y. App. Div. 1975) .......................... 12, 13

*New Kids on the Block v. New America Publishing, Inc.*,
    971 F.2d 302 (9th Cir. 1992)................................................................ 14, 19, 20

*Packman v. Chicago Tribune Co.*,
    267 F.3d 628 (7th Cir. 2001).......................................................................... 21

*Parrino v. FHP*,
    146 F.3d 699 (9th Cir. 1998).......................................................................... 7

*Pirone v. MacMillan, Inc.*,
    894 F.2d 579 (2d Cir. 1990)...................................................................... 9, 19

*Playboy Entertainment, Inc. v. Welles*,
    279 F.3d 796 (9th Cir. 2002).......................................................................... 24

*Rogers v. Grimaldi*,
    875 F.2d 994 (2d Cir. 1989).................................................................*passim*

*San Francisco Arts and Athletics, Inc. v. U.S. Olympic Committee*,
    483 U.S. 522, 107 S. Ct. 2971, 97 L. Ed. 2d 427 (1987)................................ 19

*Sebastian Intern., Inc. v. Russolillo*,
    186 F. Supp. 2d 1055 (C.D. Cal. 2000).......................................................... 22

v

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Smith v. Wal-Mart Stores, Inc.*,
   537 F. Supp. 2d 1302 (N.D. Ga. 2008) ........................................................... 11

*Thane International, Inc. v. Trek Bicycle Corp.*,
   305 F.3d 894 (9th Cir. 2002) ........................................................................ 24

*Universal City Studios, Inc. v. Tee-shirt Gallery, Ltd.*,
   634 F. Supp. 1468 (S.D.N.Y. 1986) ............................................................. 11

*Universal City Studios v. Ideal Publishing Corp.*,
   195 U.S.P.Q. 761 (S.D.N.Y. 1977) ............................................................... 21

*Velez v. VV Publishing Corp.*,
   135 A.D.2d 47, 524 N.Y.S.2d 186 (N.Y. App. Div. 1988) ............................ 13

*Waits v. Frito-Lay, Inc.*,
   978 F.2d 1093 (9th Cir. 1992) ................................................................. 15, 23

*White v. Samsung Electronics America, Inc.*,
   971 F.2d 1395 (9th Cir. 1992) ........................................................................ 9

*William O'Neil & Co., Inc. v. Validea.Com, Inc.*,
   202 F. Supp. 2d 1113 (C.D. Cal. 2002) ........................................................ 14

*Winter v. D.C. Comics*,
   30 Cal. 4th 881, 134 Cal. Rptr. 3d 634 (Cal. 2003) ....................................... 8

*Zacchini v. Scripps-Howard Broadcasting Co.*,
   433 U.S. 562, 97 S. Ct. 2849, 53 L. Ed. 2d 965 (1977) ............................... 10

**STATUTES**

15 U.S.C. § 1114 ................................................................................... 6, 22

15 U.S.C. § 1114(1)(a) ........................................................................... 2, 22

15 U.S.C. § 1115(b)(4) ............................................................................... 19

15 U.S.C. §§ 1125(a) ................................................................................ 6, 9

15 U.S.C. § 1125(a)(1)(A) ........................................................................... 22

15 U.S.C. § 1125(a)(1)(B) ........................................................................... 22

15 U.S.C. § 1125(c) ...................................................................................... 6

vi

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6) ....................................................................................*passim*

Fed. R. Civ. P. Rule 23 ............................................................................................ 3

MOTION TO DISMISS
DWT 13465533V9 3770077-000047

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## SUMMARY OF ARGUMENT/PRELIMINARY STATEMENT

Plaintiffs' complaint is deceptively simple.  They accuse Wenner Media LLC/Rolling Stone LLC ("Rolling Stone") of peddling "bootleg merchandise," specifically t-shirts, tote-bags, and posters that bear the names and images of four musical celebrities that plaintiffs, merchandising agents, allege they have the exclusive right to license (Nirvana, Run-D.M.C., Kurt Cobain, and Beyoncé (collectively, the "Artists")).  Buried in the complaint is the fact that Rolling Stone is the owner and publisher of the internationally renowned, award-winning *Rolling Stone* music magazine, and that the so-called "bootleg merchandise" are actually t-shirts, tote bags and posters that feature reproductions of famous and historic *Rolling Stone* magazine covers (the "Covers"), each of which prominently displays *Rolling Stone*'s trademark and logo, as do the inside labels and hangtags attached to the items (the "RS Promotional Items").  In fact, as the items themselves make clear, each is sold only as part of a subscription promotion campaign involving many of the most celebrated *Rolling Stone* covers, and each purchased RS Promotional Item comes with a subscription to *Rolling Stone* magazine.

During the past twenty-five years during which the underlying *Rolling Stone* Covers were published and promoted, none of the Artists or plaintiffs expressed any concern with the Covers or Rolling Stone's republication of the Covers in other promotional campaigns.  Only now, plaintiffs seek to challenge Rolling Stone's constitutionally permissible republication of the same covers on the RS Promotional Items as part of a campaign to celebrate the Covers and the *Rolling Stone* brand, promote *Rolling Stone*'s quality and content, and increase subscriptions.  However, based upon the complaint and a review of the actual RS Promotional Items in dispute, it is evident that plaintiffs' three trademark claims fail as a matter of law for several independent reasons.

First, it is axiomatic that the RS Promotional Items are expressive non-commercial speech that is fully protected by the First Amendment.  Not only are

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

t-shirts, tote bags, and posters entitled to full constitutional protection when they act as the conduit for speech; in this case, the RS Promotional Items are republications of *Rolling Stone*'s famous cover art and are sold as part of a promotional subscription program.  As such, Rolling Stone has the constitutional right to promote its magazine by reprinting its famous Covers on other merchandise, regardless if such merchandise is sold for profit, or in a manner which encourages subscriptions to *Rolling Stone*.  (***Point II (A)***)

Second, because the claims arise from the use of the Artists' names and images in expressive works, plaintiffs' trademark claims are barred by the First Amendment because the use of such names and images have artistic relevance to the Covers and the RS Promotional Items do not explicitly suggest an endorsement by any of the Artists featured on the Covers.  *E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095 (9th Cir. 2008).  Here, the Artists plainly have direct artistic relevance to the actual Covers on which they appeared, and given the prominent display of *Rolling Stone*'s logo on the RS Promotional Items, there can be no implication of an endorsement, let alone an explicit one.  As such, the RS Promotional Items as a matter of law are not actionable under the Lanham Act. (***Point II (B)***)

Third, plaintiffs' trademark claims are also barred by the nominative fair use defense.  Any use of the Artists' trademarks on RS Promotional Items are *bona fide* uses for non-trademark purposes that do not convey sponsorship or endorsement. Rolling Stone's use of the Artist's name or likeness is merely a descriptive use to identify his or her actual appearance on the cover of *Rolling Stone*.  (***Point II (C)***)

Finally, plaintiffs fail to properly plead each of their purported trademark claims.  Thus, they bring a "False Advertising Claim," but fail to allege, as required, any competitive injury.  They bring a claim for trademark infringement under Section 1114(1)(a) of the Lanham Act, but fail to identify any registered trademarks owned by the Artists that allegedly have been used by Rolling Stone.  And they bring

2

MOTION TO DISMISS
DWT 13465533V9 3770077-000047

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

a claim for trademark dilution, but fail to allege any actual dilution, and could not since the reproduction of *Rolling Stone*'s covers is entirely descriptive and accurate. (***Point II (D)***))

## FACTS AND PROCEDURAL HISTORY

### The Parties

Plaintiffs F.E.A. Merchandising, Inc. ("FEA"), Live Nation Merchandise, Inc. ("Live Nation"), and Bravado International Group Merchandising Services, Inc. ("Bravado") are merchandisers that produce, distribute, and sell merchandise, including t-shirts and posters. Compl. ¶¶ 4, 8, 12. FEA, Live Nation, and Bravado allege that they control exclusive merchandising rights for "numerous well-known musical artists," specifically all "rights in and to the names, trademarks, likenesses, and rights of publicity" for the artists Nirvana, Kurt Cobain, Beyoncé, and Run-D.M.C. *Id.* ¶¶ 5, 9, 13, 21.[1]

Wenner Media LLC is the parent company of Rolling Stone LLC, the owner and publisher of *Rolling Stone* magazine, an internationally renowned publication that has chronicled the music industry since its launch in 1967. Compl. ¶ 17; Declaration of John Gruber ("Gruber Dec."), ¶ 2. More than 1,450,000 copies of *Rolling Stone* magazine are distributed every two weeks, with estimated readership exceeding 12 million. *Id.*

---

[1] Beyond these four musical artists, the complaint does not identify what artists plaintiffs represent, or which of these artists have an interest in this action. Nonetheless, plaintiffs appear to be attempting to bring this action on behalf of *all* of the artists they represent. *See, e.g.*, Compl. ¶¶ 16, 29, 37, 43. However, they did not plead a class action and have not otherwise pled sufficient facts to assert claims on behalf of unidentified individuals concerning unrevealed trademarks or other rights used on unspecified works. *See* Fed. R. Civ. P. 23 (plaintiff in class action must allege the class is so numerous that joinder is impracticable; common questions of law or fact; claims and defenses of the class representative are typical of those of the class; and class representative will fairly and adequately represent the interests of the class); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) (to avoid dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face").

3

MOTION TO DISMISS
DWT 13465533V9 3770077-000047

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Hybrid Promotions LLC d/b/a "Hybrid Apparel" is a California limited liability company with its principal place of business in Cypress, California, and it was responsible for manufacturing and distributing some of the RS Promotional Items.  Compl. ¶ 18.

**The Covers**

*Rolling Stone* magazine covers are a part of both music history and popular culture.  Gruber Dec. ¶ 4.  Since 1967, Rolling Stone has reproduced its famous magazine covers in not only the magazine itself (print and online), but also in two separate books:  *Rolling Stone The Complete Covers*, published by Aradale Press, 1998, and *Rolling Stone, 1000 Covers*, published by Harry N. Abrams, Inc., 2006.  *Id.*; Pa Dec. Ex. 4.  Five covers are at issue in this action, all published within the last twenty-five years.  Compl. ¶¶ 21-22.

- The cover from the December 4, 1986 issue (RS 488) of *Rolling Stone* that featured the rap group Run-D.M.C. and the cover line "Run-D.M.C. Sets the Record Straight on Rap Music and Violence," along with other cover lines (the "Run-D.M.C. Cover").  Gruber Dec. Ex. E.

- The cover from the April 16, 1992 issue (RS 628) of *Rolling Stone* that featured Nirvana as one of the "New Faces of Rock 1992" and a cover headline, "Inside the Heart and Mind of Kurt Cobain," along with other cover lines (the "Nirvana Cover").  *Id.* Ex. H.

- The June 2, 1994 issue (RS 683) of *Rolling Stone* that was an "in memoriam" cover on the death of Kurt Cobain, featuring his image and the dates of his birth and death (the "Cobain Memoriam Cover").  *Id.* Ex. J.

- The cover from the May 13, 1999 issue (RS 812) of *Rolling Stone* that featured Kurt Cobain and the cover line "Artist of the Decade", along with other cover lines (the "Cobain 'Artist of the Decade' Cover").  *Id.* Ex. N.

- The March 4, 2004 issue (RS 943) of *Rolling Stone* that featured the artist Beyoncé and the cover line "Beyoncé. What Makes the Shy Girl So Hot," along with other cover lines (the "Beyoncé Cover").  *Id.* Ex. P.

Plaintiffs and the Artists assert no claims arising out of the use of the Artists' images and names on the cover of *Rolling Stone*, or any associated advertising and promotion.  Compl., *passim*.  Instead, plaintiffs' claims arise out of the reproduction of the *Rolling Stone* covers – complete with all cover lines and the prominent display

4

MOTION TO DISMISS
DWT 13465533V9 3770077-000047

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

of the distinctive *Rolling Stone* trademark and logo – on RS Promotional Items as part of a subscription promotion campaign for the magazine (the "Campaign"). Compl. ¶ 22.

## The RS Promotional Items

*Rolling Stone* consistently has promoted its magazine and sought new subscribers by republishing its covers in all forms of media and display.  Gruber Dec. ¶ 5.  For several years, Rolling Stone has engaged in a subscription promotion campaign that features its iconic magazine covers on posters and that provides each purchaser of a poster with a subscription to *Rolling Stone* for no additional cost.  *Id.* ¶ 6.  In May 2008, Rolling Stone expanded the subscription Campaign by featuring selected *Rolling Stone* Covers on collectors-edition t-shirts.[2]  *Id.*  Described by plaintiffs as "bootleg merchandise," Compl. ¶ 20, the Campaign has to date used over eighty-four individual covers selected from the *Rolling Stone* archive, including the five covers at issue here.  Gruber Dec. ¶ 6.  (In addition, the Campaign includes t-shirts that do not contain any reproductions of any covers, but features only the ROLLING STONE trademark in its distinctive logotype.  *Id.*)

The front of each RS Promotional Item that contains a reproduction of a famous *Rolling Stone* cover clearly contains the ROLLING STONE mark[3] in its distinctive logotype at the top.  *See* Gruber Dec., Exs. A, B, C, F, I, K, O, Q.  The

---

[2] The Campaign was later further expanded to include reproductions of certain covers on tote bags.  Gruber Dec. ¶ 6.  Of the RS Promotional Items identified in the Complaint, the Campaign only uses the Beyoncé Cover on a tote bag and only the Cobain Memoriam Cover as a poster.  *Id.*

[3] Rolling Stone's rights in its famous mark are evidenced by the more than 60 trademark registrations and applications in the United States and worldwide, including the following trademark registrations and applications in the United States: ROLLING STONE (an incontestable U.S. Registration, No. 1,574,947, for entertainment magazines); ROLLING STONE (stylized) (an incontestable U.S. Registration, No. 1,588,810, for entertainment magazines); ROLLING STONE.COM (stylized) (an incontestable U.S. Registration, No. 2,163,640, for providing an online magazine and providing information online in the fields of popular culture, politics, and music); and ROLLING STONE (stylized) (U.S. Registration, No. 2,726,171, for backpacks.  Gruber Dec. ¶ 3.

inside label of the t-shirt is branded with the mark ROLLING STONE COLLECTION.  The back of the t-shirts are either blank or have the "RS" trademark in its distinctive logotype.  Each t-shirt has attached to it a ROLLING STONE COLLECTION branded hangtag.  *Id.* Exs. A-C.  The inside label of each tote bag is branded with the mark ROLLING STONE ORIGINALS.  *Id.* ¶ 17(b), Exs. D, S. Each poster is branded with the mark ROLLING STONE AUTHENTIC and contains a sticker that states "1 Year of Rolling Stone + Rolling Stone Collection Poster Just $9.99."  *Id.* ¶ 14(d), Ex. M.

The Campaign is intended to celebrate and promote the famous *Rolling Stone* covers and brand, and to increase reader subscriptions.  *Id.* ¶ 8.  The Campaign is structured so that the purchase price includes a complimentary 26-issue or 12-issue subscription to *Rolling Stone* magazine as well as the RS Promotional Item.  *Id.*  The hangtag affixed to each t-shirt and tote bag contains a redemption card that prominently states:  "YOU PAID FOR IT.  TELL US WHERE TO SEND IT," and features a montage of other Rolling Stone covers, along with the magazine's distinctive trademark.  *Id.* Ex. T, emphasis in original.  The redemption card states that the purchaser may "Claim your 12 issue Rolling Stone Subscription" with the purchase of the t-shirt or tote bag, and then asks that the purchaser set forth his or her name, address, and email address.  *Id.*  A subscription card also accompanies each poster, with a sticker on the outside of the package stating "1 Year of Rolling Stone + Rolling Stone Collection Poster Just $9.99."  *Id.* Exs. M, U.

## **The Complaint**

Arising out of the sale of the RS Promotional Items as part of the magazine's subscription promotion campaign, plaintiffs bring a series of claims, including three claims under the Lanham Act: a False Advertising claim under 15 U.S.C. §§ 1125(a), a Trademark Infringement claim under 15 U.S.C. § 1114, and a Trademark Dilution claim, under 15 U.S.C. § 1125(c) ("Trademark Claims").  Compl. ¶¶ 28-44. Plaintiffs also bring companion state law right of publicity and unfair competition

MOTION TO DISMISS
DWT 13465533V9 3770077-000047

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

claims.  For the reasons set forth below, plaintiffs' Trademark Claims must be dismissed and the Court should decline to exercise supplemental jurisdiction over plaintiffs' remaining state and common law claims.

## ARGUMENT

### I.

### THE ISSUES PRESENTED IN THIS MOTION SHOULD BE DECIDED AT THE PLEADING STAGE

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims.  Dismissal is warranted if no relief could be granted under any set of facts that could be proved consistent with the allegations.  *See Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *Twombly*, 550 U.S. at 563.  In evaluating the facts alleged in the complaint, a court should not "accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations."  *Ileto v. Glock*, 349 F.3d 1191, 1200 (9th Cir. 2003).

When ruling on a motion to dismiss, a court may consider not only the plaintiff's allegations, but also material that properly is the subject of judicial notice. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).  The Ninth Circuit also has recognized that a court may consider "document[s] the authenticity of which [are] not contested, and upon which plaintiffs' complaint necessarily relies[,]" even if those materials are not attached to the complaint.  *Parrino v. FHP*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds, Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006).  Thus, courts deciding Rule 12(b)(6) motions regularly examine expressive works, even if not attached to the complaint, to determine whether they are actionable.  *See Brown v. Electronic Arts, Inc.,*  Case No. 2:09-cv-01598-MMM (C.D. Cal. Sept. 23, 2009) (hereinafter "*Brown*") (analyzing allegedly infringing video game at issue, holding that the First Amendment barred the Plaintiff's Lanham Act claim); *Burnett v. Twentieth Century Fox Film Corp.*, 491 F. Supp. 2d 962, 973 (C.D. Cal. 2007) (granting motion to

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

dismiss misappropriation and Lanham Act claims after reviewing television program that formed basis of lawsuit); *Metrano v. Twentieth Century Fox*, Case No. CV 08-6314 PSG (VCKx) (C.D. Cal. July 16, 2009) (taking judicial notice of defendants' film; granting motion to dismiss Lanham Act claim); *Kent v. Universal Studios*, Case No. CV 08-2704 GAF (SHx) (C.D. Cal. Aug. 15, 2008) (same).

Here, plaintiffs' three trademark claims all arise from the reproduction of actual *Rolling Stone* covers on the RS Promotional Items as part of Rolling Stone's subscriber promotion campaign.  Compl. ¶¶ 20-22.  Since the RS Promotional Items are extensively referred to in the Complaint and are the sole basis of the claims, the Court may (and should) consider the contents of the RS Promotional Items in deciding this motion.

By doing so, this Court may resolve this lawsuit at the pleading stage, which is especially appropriate because plaintiffs' claims target expressive works.  In *Winter v. D.C. Comics*, 30 Cal. 4th 881 134 Cal. Rptr. 3d 634 (Cal. 2003), the California Supreme Court emphasized that "because unnecessarily protracted litigation would have a chilling effect upon the exercise of First Amendment rights, speedy resolution of cases involving free speech is desirable." *Id.* at 891.  To that end, the Court noted that misappropriation and related claims "can often [be] resolve[d] … as a matter of law simply by viewing the [defendant's] work in question and, if necessary, comparing it to an actual likeness of the [plaintiff]." *Id*.  Critically, the Court instructed that such claims are "*often* properly resolved on summary judgment or, if the complaint includes the work in question, even [on] demurrer" (or, by logical extension, on a motion to dismiss). *Id*. (emphasis added).  That is the precisely the case here.

## II.

## PLAINTIFFS' TRADEMARK CLAIMS SHOULD BE DISMISSED

The Lanham Act "does not prohibit all unauthorized uses of a trademark"; instead a trademark owner's rights are violated only where the unauthorized use has a

8

substantial capacity to mislead consumers into confusion as to the source of the goods or services. *Bosley Medical Inst, Inc. v. Kremer,* 403 F.3d 672, 677, 679 (9th Cir. 2005) ("[t]rademark infringement protects only against mistaken *purchasing decisions* and not against confusion generally") (emphasis in original).

Where, as here, a celebrity brings a trademark claim, the "celebrity persona" functions as the "mark" for trademark purposes. *See White v. Samsung Electronics America, Inc.,* 971 F.2d 1395, 1399-1400 (9th Cir. 1992). But, as the court observed in *Cairns v. Franklin Mint*, 107 F. Supp. 2d 1212, 1214 (C.D. Cal. 2000), "not all uses of a celebrity's image are actionable under § 1125(a). Only uses which suggest sponsorship or approval are prohibited [,] … not mere use of an image or name." *Id.*

Plaintiffs have not identified any trademark registrations associated with the Artists they represent, nor have they identified any specific images of the Artists that they claim function as source identifiers for the Artists. Compl., *passim*. As recognized by the Sixth Circuit in declining to accept the "untenable" claim that Tiger Woods functions as a "walking, talking trademark," and that therefore all images of him denote sponsorship, "mere images of the celebrity itself" are not protectable as a trademark because they do not perform the trademark function of designation. They do not distinguish and identify the source of goods." *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 922 (6th Cir. 2003).[4] *See also Pirone v. MacMillan, Inc.*, 894 F.2d 579, 583 (2d Cir. 1990) (no trademark protection in photographs of Babe Ruth since "an individual's likeness is not a consistently represented fixed image"); *Estate of Presley v. Russen*, 513 F. Supp. 1339, 1363-1364 (D.N.J. 1981) (Presley estate did not have a trademark in every "likeness and image" of Elvis).

---

[4] With a finding that is equally true here, the *ETW* court observed that "there are undoubtedly thousands of images of Woods taken by countless photographers … which have been published in many forms of media, and sold and distributed throughout the world." *Id.* at 922. Innumerable photos of Nirvana, Cobain, Run-D.M.C., and Beyoncé have similarly been published and sold and the Complaint does not identify any specific images of the Artists that are consistently used to denote their sponsorship.

MOTION TO DISMISS
DWT 13465533V9 3770077-000047

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

In addition to the other independent grounds for dismissal identified below, the First Amendment provides a complete defense to each of the three Trademark Claims brought by plaintiffs.

## A.   RS Promotional Items Are Entitled To Full First Amendment Protection

### 1.   The RS Promotional Items Are Expressive Speech

Plaintiffs do not challenge the use of the Artists' names and likenesses on the covers of *Rolling Stone* as originally published and promoted.  Instead, plaintiffs challenge the reproduction of the *same* covers on RS Promotional Items, even though the items themselves demonstrate that they are only sold as part of *Rolling Stone*'s subscription promotion campaign.  Gruber Dec., Exs. A-U.  The first step in any trademark analysis is to determine whether the items at issue contain purely commercial speech or expressive speech.  Here, the law is clear that the RS Promotional Items are afforded full First Amendment protection as expressive non-commercial speech.[5]

The California Supreme Court has flatly rejected the contention that t-shirt merchandise bearing celebrity images is commercial speech; instead, it recently held that t-shirts containing the bare reproduction of a charcoal drawing of the Three Stooges and sold for profit were nevertheless "expressive works and not advertisement or endorsement of a product."  *Comedy III Prods. v. Gary Saderup, Inc.,* 25 Cal. 4th 387, 396, 106 Cal. Rptr. 2d 126 (2001).  In *Comedy III,* the Court found that defendant's t-shirts did not lose their First Amendment protection merely because they were entertaining rather than informing, or were in the "form of

---

[5] The "protection of the First Amendment is not limited to written or spoken words."  *ETW Corp.*, 332 F.3d at 924.  *See also Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562, 578, 97 S. Ct. 2849, 2859, 53 L. Ed. 2d 965 (1977) ("entertainment, as well as news, enjoys First Amendment protection").  This is because non-commercial speech receives more robust constitutional protection.  *Id.*  That said, even "commercial speech does receive some First Amendment protection."  *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1018 (3d Cir. 2008); *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561, 100 S.Ct. 2343, 2349, 65 L. Ed. 2d 341 (1980).

10

MOTION TO DISMISS
DWT 13465533V9 3770077-000047

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

nonverbal, visual representation, or even because they contained "no discernable message." *Id.* at 399. Moreover, the fact that the shirts were not original, single works of art, but instead were part of a commercial enterprise designed to generate profit solely from the sale of multiple reproductions of the likeness of the Three Stooges, did not undermine the fact that they were fully protected expression. *Id.* at 408.[6]

Indeed, in case after case, courts have held that speech conveyed on a t-shirt is entitled to full First Amendment protection, regardless of whether the shirt was sold for profit. *See, e.g., Ayres v. City of Chicago*, 125 F.3d 1010, 1014 (7th Cir. 1997) (t-shirts were akin to "the sandwich boards that union pickets sometimes wear"; the t-shirts were "a medium of expression prima facie protected by the free-speech clause of the First Amendment, and they do not lose their protection by being sold rather than given away"); *Universal City Studios, Inc. v. Tee-shirt Gallery, Ltd.*, 634 F. Supp. 1468, 1477 (S.D.N.Y. 1986) (refusing to enjoin makers of "Miami Mice" t-shirts parodying the Miami Vice television series); *Smith v. Wal-Mart Stores, Inc.*, 537 F. Supp. 2d 1302, 1339-1340 (N.D. Ga. 2008) (t-shirts containing parody were noncommercial speech and not subject to Wal-Mart's trademark dilution claims, despite the fact that defendant sold shirts to the public); *c.f., Cohen v. California*, 403 U.S. 15, 91 S. Ct. 1780, 29 L. Ed. 2d 284(1971) (jacket carrying political message was protectable speech).

---

[6] The court in *Comedy III* ultimately held that defendant's depiction of the Three Stooges was not immune from misappropriation claims by the owner of the Three Stooges' post-mortem rights of publicity. Specifically, the defendant's shirts were infringing because they were not sufficiently transformative; instead, they consisted of literal and nearly identical charcoal drawings of the faces of the Three Stooges. 25 Cal. 4th at 408-409. But unlike in *Comedy III*, the *Rolling Stone* Covers are not a mere reproduction of the Artists' names and images on merchandise; instead, they are reproductions of previously published *Rolling Stone* magazine cover art designed by Rolling Stone, with the highly distinctive *Rolling Stone* logo at the top, cover lines communicating messages concerning the Artists, issue numbers and other design elements. As such, the Covers are plainly transformative and are more akin to the "collage of images" found to be sufficiently transformative in the Tiger Woods decision discussed above. *ETW*, 332 F.3d at 938.

MOTION TO DISMISS
DWT 13465533V9 3770077-000047

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Here, the *Rolling Stone* Covers, with their distinctive artistic designs and communicative cover lines, are textbook example of expressive, non-commercial speech. When the *Rolling Stone* Covers are reproduced in full on RS Promotional Items, like the Three Stooges depiction in *Comedy III,* they do not lose their status as expressive works fully protected by the First Amendment.

### 2.    The *Rolling Stone's* Covers Were Republished To Promote The Magazine's Quality And Content

While fully protected as independent expressive works, the RS Promotional Items enjoy additional constitutional protection because they are marketed as a means to promote the magazine and increase subscriptions. A magazine's cover is its calling card and best evidences the quality and content of the publication. As courts have repeatedly acknowledged, the primary way for a publication to promote itself is to show its covers or other examples of actual features from the magazine. Such uses are a necessary and logical extension of the clearly protected editorial use of the content on and in the magazine, and do not give rise to any claims from individuals featured on a cover. *See Montana v. San Jose Mercury News, Inc.,*34 Cal. App. 4th 790, 797, 40 Cal. Rptr. 2d 639, 643 (1995); *Namath v. Sports Illustrated,* 48 A.D.2d 487, 371 N.Y.S.2d 10 (N.Y. App. Div. 1975) ("use of plaintiff's photograph was merely incidental advertising of defendants' magazine in which plaintiff had earlier been properly and fairly depicted"). Even if a republication of its past covers involve "in motivation, sheer advertising and solicitation" and even if "the reproduction appeared in other media[,]" the reproduction is still protected speech. *Id.* at 488.

In *Montana*, for example, quarterback Joe Montana took issue when the *San Jose Mercury News* republished its front page celebration of the San Francisco 49er's Super Bowl win on posters – prominently featuring an artist's rendition of Montana – and sold them to the public. *Montana*, 34 Cal. App. 4th at 797. As here, Montana did not challenge the use of his name or likeness on the front pages of the newspaper.

Instead, his action arose exclusively out of the posters sold for profit, which he

argued did not enjoy First Amendment protection.  The court rejected Montana's

argument finding that the posters are:

> similarly entitled to First Amendment protection…. This is because
> Montana's name and likeness appeared in the posters for *precisely* the
> same reason they appeared on the original newspaper front pages:
> because Montana was a major player in contemporaneous newsworthy
> sports events.

*Id.* at 794 (emphasis in original).  Thus, the court held that the newspaper had a

constitutional right to promote itself by reproducing its front covers to illustrate the

quality and content of its work product.  "Constitutional protection extends to the

truthful use of a public figure's name and likeness in advertising which is merely an

adjunct of protected publication and promotes only the protected publication." *Id.* at

797.[7]

Case after case has recognized the now-settled principle that magazines and

newspapers may reproduce their covers or articles on products and in ads to illustrate

their content and to increase subscriptions.  *See, e.g.*, *Booth v. Curtis Publishing

Company*, 15 A.D.2d 343, 223 N.Y.S.2d 737 (N.Y. App. Div. 1962), *aff'd*, 11

N.Y.2d 907, 228 N.Y.S.2d 468 (1962) (republication of photo of actress in a full-

page advertisement for the magazine not actionable as commercial speech); *Lerman

v. Flynt Distributing Co., Inc.*, 745 F.2d 123, 130-131 (2nd Cir. 1984) (republications

of front page of magazine in solicitations for subscriptions which identified plaintiff

as having posed nude in a movie did not infringe her right of publicity); *Velez v. VV

Publ. Corp.,* 135 A.D.2d 47, 524 N.Y.S.2d 186 (N.Y. App. Div. 1988) (subscription-

soliciting advertisement containing reproduction of newspaper cover depicting

plaintiff did not infringe publicity right); *Lawrence v. A.S. Abell Co.*, 299 Md. 697,

707, 475 A.2d 448, 453-454 (Md. 1984) (newspaper's advertising campaign that

---

[7] For the reasons set forth in *Namath*, *Montana*, and related cases, plaintiff's
state law right of publicity and unfair competition claims also fail, as will be readily
established in any subsequent proceedings.

MOTION TO DISMISS
DWT 13465533V9 3770077-000047

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

reproduced a front page photograph of two infants was mere incidental use of photograph and did not suggest that infants endorsed newspaper or its advertising campaign); RESTATEMENT THIRD, UNFAIR COMPETITION § 47, comment a (1995) ("[a] magazine soliciting subscriptions, for example, may refer to a past article about a particular celebrity as an illustration of the magazine's customary content").[8]

Rolling Stone, like other publications, has the constitutional right to promote itself and to solicit subscriptions by reproducing its indisputably fully protected covers in other mediums.  Rolling Stone's republication of its actual Covers on the RS Promotional Items is no different than the publication of Namath's photograph in subscription-soliciting advertisements for *Sports Illustrated* or the publication on posters of Montana's image from the front pages of the *San Jose Mercury News.*  The Ninth Circuit has made clear that "trademark laws do not give the [celebrities] the right to channel their fans' enthusiasm (and dollars) only into items licensed or authorized by them."  *New Kids on the Block v. New America Pub.*, 971 F.2d 302, 309 (9th Cir. 1992) (newspapers' use of plaintiff's names to conduct a survey for profit not actionable).[9]

---

[8] Analogously, courts regularly dismiss claims based on advertisements for expressive works because such advertisements are incidental to the constitutionally protected activity.  *See, e.g., William O'Neil & Co., Inc. v. Validea.Com, Inc.*, 202 F. Supp. 2d 1113, 1119 (C.D. Cal. 2002) (granting defendants' Rule 12(b)(6) motion dismissing misappropriation and unfair competition claims based on advertisement for a book critical of plaintiff; advertisement was "an adjunct" of the book, and was accordingly "protected to the same extent as the book itself"); *Hoepker v. Kruger*, 200 F. Supp. 2d 340, 350-351 (S.D.N.Y. 2002) (granting Rule 12(b)(6) motion to dismiss claims based on advertisements that used photograph of plaintiff to promote an art exhibit); *Astaire v. Best Film & Video Corp.*, 116 F.3d 1297, 1301 (9th Cir. 1997) (defendants may reproduce image of Fred Astaire on advertisement for instructional dance videos).

[9] Tellingly, these claims come not from the Artists themselves but from their licensing agents, which show how the heart of this litigation is the fact that the RS Promotional Items were sold "without in any way compensating the Artists", or, more specifically, their exclusive merchandising agents.  Compl. ¶ 20.

14

In short, the reproduction of the *Rolling Stone* Covers on merchandise to promote the magazine and to generate subscriptions is expressive activity that is fully protected by the First Amendment.

**B.**   **The First Amendment Bars Plaintiffs' Trademark Claims Because Any Use Of The Artists' Names And Likenesses Had Artistic Relevance To The Covers, And The RS Promotional Items Do Not Explicitly Mislead As To Source Or Origin**

While "Section 43(a) of the Lanham Act prohibits the use of false designations of origin, false descriptions, and false representations in the advertising and sale of good and services," *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1106 (9th Cir. 1992), where, as here, plaintiffs' trademark claims arise from the alleged use of a name or likeness in an expressive work, courts do not apply the traditional likelihood-of-confusion test because it "fails to account for the full weight of the public's interest in free expression." *Mattel v. MCA Records*, 296 F.3d 894, 900 (9th Cir. 2002). Instead, to prevent plaintiffs from misusing the Lanham Act to stifle expressive works, the Ninth Circuit adopted the two-part *Rogers v. Grimaldi* test. *E.S.S. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008). Under the *Rogers* test, the Lanham Act will "apply to artistic works *only* where the public interest in avoiding consumer confusion outweighs the public interest in free expression." *Rogers v. Grimaldi*, 875 F.2d 994, 995 (2d Cir. 1989) (emphasis in original).

The *Rogers* test has two prongs. First, a court must examine whether the defendant's use of the trademark has any artistic relevance to the underlying work. *Id.* "[O]nly the use of a trademark with no artistic relevance to the underlying work whatsoever does not merit First Amendment protection … In other words, the level of relevance merely must be above zero." *E.S.S.* 547 F.3d at 1100. Second, the court evaluates whether the use "*explicitly* misleads" as to the source or the content of the work. *Id.* (emphasis added). To be "explicitly mislead[ing]," the defendant's work must make some affirmative statement of the plaintiffs' sponsorship or endorsement, beyond the mere use of plaintiffs' name or other characteristic. *See Rogers*, 875 F.2d

MOTION TO DISMISS
DWT 13465533V9 3770077-000047

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

at 1001; *E.S.S.*, 547 F.3d at 1101.  As the Ninth Circuit has suggested, if the only alleged basis for a claim of sponsorship or endorsement is the inclusion of the plaintiff's mark within the defendant's work, the plaintiff necessarily fails to satisfy the second prong of the *Rogers* test.  *MCA Records*, 296 F.3d at 902.  Any other result "would render *Rogers* a nullity."  *Id.*  *See also Rogers*, 875 F.2d at 1001 (holding that title of the film *Ginger and Fred* did not explicitly mislead consumers into believing that Ginger Rogers approved or produced the film); *ETW*, 332 F.3d at 915, 920, 937 (even though defendant used the registered mark "Tiger Woods" in marketing materials and depicted image of Woods in prints, merchandise did not explicitly mislead as to sponsorship or endorsement).

When the *Rogers* test has been applied to a broad array of expressive works – including videogames, movies, covers of CDs, posters, and the like – courts routinely have granted motions to dismiss.  The August 2008 decision from Judge Feess in *Kent v. Universal Studios, Inc.*, Case No. CV08-2704 GAF (SHx) (C.D. Cal. 2008), is instructive.  There, a television journalist who briefly achieved fame as the "Stud Scud" during the First Gulf War sued the producer of the film *Charlie Wilson's War*, alleging that the film's use of war footage narrated by the journalist gave rise to a false-endorsement claim under Section 43(a).  *Kent* at 2.  The court stated that the defendants' motion to dismiss "raised essentially … legal questions" – including application of the two-part *Rogers* test – "that do not require further factual development."  *Id.*  For purposes of the motion, the court reviewed the film and accepted as true the allegations that the defendants used the footage without the plaintiff's permission, that the footage contained his voice, and that filmgoers "recognized his voice."  *Id.* at 3.  In dismissing the Lanham Act claim with prejudice, the court held that the footage had artistic relevance to the film, and that the film did not explicitly mislead viewers as to the plaintiff's endorsement of the film.  *Id.*  *See also Metrano v. Twentieth Century Fox Film Corp., et al.*, Case No. 08-6314 PSG (VBKx) (C.D. Cal. 2009) (motion to dismiss Lanham Act claim granted on alleged

16

use of plaintiff's comedy act in television series *Family Guy*); *Brown, supra*
(defendants' motion to dismiss Lanham Act claims granted on alleged use of football
player's likeness in video games); *Armstrong v. Eagle Rock Enter., Inc.*, 09-Cv-
11704 (E.D. Mich. Sept. 10, 2009) (defendants' motion for judgment on the
pleadings dismissing Lanham Act claim based on the unauthorized use of plaintiff's
image on the back cover and internal packaging on a DVD concerning a historic jazz
orchestra and concert).[10]

Here, the use of the Artists' names and likenesses on reproductions of actual
*Rolling Stone* covers on which they each appeared easily meets the very low artistic
relevance threshold. *E.S.S.*, 547 F.3d at 1160. The reproduction of *Rolling Stone*
covers that include the Artists' names and likenesses as examples of the quality and
content of the magazine to promote *Rolling Stone* clearly exceeds the requirement
that there be some artistic relevance above "zero relevance" to the magazine. *E.S.S.*,
547 F.3d at 1160.

Under the second prong of the *Rogers* test, the question is whether the RS
Promotional Items "explicitly" signaled that the Artists sponsored or endorsed the
items. *E.S.S., 547* F.3d at 1100; *MCA Records*, 296 F.3d at 902 (must "explicitly
mislead as to the source or the content of the work"). As noted above, the alleged
use of the Artists' names and likeness on the Covers alone is insufficient as a matter
of law to establish that the RS Promotional Items are explicitly misleading. *E.S.S.*,
547 F.3d at 1101 ("mere use of a trademark alone cannot suffice to make such use

---

[10] Other courts have not hesitated to dismiss Lanham Act claims when the
defendant's expressive work is before the court on a Rule 12(b)(6) motion. *See, e.g.,
Comedy III Prods. v. New Line Cinema*, 200 F.3d 593, 596 (9th Cir. 2000); *Burnett*,
491 F. Supp. 2d at 972-973 (granting motion to dismiss Section 43(a) claim based on
animated television show's parody of actress); *Felix the Cat Prods. v. New Line
Cinema,* 54 U.S.P.Q.2d 1856, 1857-1858 (C.D. Cal. Apr. 28, 2000) (granting motion
to dismiss Lanham Act claim based on defendants' use of clip of Poindexter cartoon
in movie *Pleasantville*).

MOTION TO DISMISS
DWT 13465533V9 3770077-000047

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

explicitly misleading"); *ETW*, 332 F.3d at 920, 937.  There must be something more, but here there is nothing to support endorsement, let alone explicit endorsement.

While plaintiffs allege that the RS Promotional Items create the "false impression" that the Artists endorsed or sponsored the items, they provide no support for that legal conclusion.  Compl. ¶ 29.  In fact, a simple review of the challenged items belies any suggestion of endorsement.  The RS Promotional Items at issue are only five out of more than eighty different Covers selected to be included in this subscription program (and the Campaign also includes the t-shirts that only feature the famous ROLLING STONE mark without the reproduction of any covers).  Gruber Dec. ¶ 6.  The only unifying theme is the fact that they are all sold by *Rolling Stone* magazine, feature *Rolling Stone's* magazine covers, and each comes with a complimentary subscription to *Rolling Stone* magazine.  Moreover, each reproduction of a *Rolling Stone* cover prominently features the distinctive *Rolling Stone* trademark, which is also displayed on the t-shirt's inside label and the subscription redemption tags attached to each item.  *Id.* ¶ 7-8.  The unmistakable conclusion is that Rolling Stone reproduced its own famous magazine covers on the merchandise as part of a subscription promotion program.  There is nothing to support an "explicit" endorsement from any Artist referred to or depicted on the Covers.  *Abdul-Jabbar v. GMC,* 85 F.3d 407, 413 (9th Cir. 1996) ("[n]ewspapers and magazines commonly use celebrities' names and photographs without making endorsement contracts, so the public does not infer an endorsement agreement from the use").

Finally, even if there is any risk that consumers may mistakenly believe that the Artists somehow endorsed the RS Promotional Items, the mere risk of consumer mistake cannot meet plaintiffs' burden of showing affirmative and explicit acts of misrepresentation.  For example, in *Rogers,* 875 F.2d at 1001, even though survey evidence suggested that some members of the public drew the incorrect inference that Ginger Rogers was associated with the defendants' film based on its title

18

MOTION TO DISMISS
DWT 13465533V9 3770077-000047

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"*Ginger and Fred*", the court held that the "risk of misunderstanding, not engendered by any overt claim in the title, is so outweighed by the interests in artistic expression as to preclude application of the Lanham Act." *Id.  See also Armstrong,* Order at 19 (holding that use of plaintiff's image on DVD back cover with erroneous statement concerning plaintiff's consent, which could be mistakenly viewed as an endorsement, was not sufficient to overcome First Amendment defense).

## C.   Rolling Stone's Use Of The Artist's Name And Likeness Was Not A Trademark Use; Any Use Was Protected By The Nominative Fair Use Defense

Plaintiffs cannot bring a Lanham Act claim where the allegedly infringing use of the mark "is descriptive of and used fairly and in good faith only to describe the goods ... of such party [.]" 15 U.S.C. § 1115(b)(4); *see San Francisco Arts and Athletics, Inc. v. U.S. Olympic Comm.,* 483 U.S. 522, 565, 107 S. Ct. 2971, 97 L. Ed. 2d 427 (1987).  This is especially the case with names: "[p]ersonal names used as trademarks are generally treated as descriptive terms, since a name might be regarded as a convenient description[;]" as such, names are only protected if "through usage, they have acquired distinctiveness and secondary meaning." *Pirone*, 894 F.2d at 583 (name "Babe Ruth" was used in merchandise only in the descriptive sense).

Rolling Stone's descriptive use of the Artists' names or likenesses to accurately depict its actual covers on which the Artists appeared is not a trademark use; or, put differently, it is a nominative fair use insulated from liability because such use "does not implicate the source-identification function that is the purpose of the trademark." *New Kids*, 971 F.2d at 308.  There are three elements for a nominative fair use defense: (1) plaintiffs' product or service in question must be one not readily identifiable without use of the trademark; (2) only so much of the mark or marks may be used as is reasonably necessary to identify the [plaintiffs'] product or service; and (3) the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. *Id.  See also Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002).

MOTION TO DISMISS
DWT 13465533V9 3770077-000047

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

In the seminal *New Kids* case, two newspapers used the trademarked name of the plaintiff – a teen band – to publicize their product, a for-profit telephone poll about the band. 971 F.2d at 304. The Ninth Circuit held that the fair use defense barred the band's trademark claims because the newspapers had used the band's name accurately to describe plaintiffs' product (*e.g.*, their band), even though defendants' ultimate goal was to describe their own products. *Id.* In response to the band's arguments that their fans have limited resources, the newspaper's product directly competes with their products, and the newspapers sought to usurp the band's good will and publicity, the Ninth Circuit held that the band's trademark "right does not entitle them to control their fans' use of their own money." As the court noted, "trademark laws do not give the [band] the right to channel their fans' enthusiasm (and dollars) only into items licensed or authorized by them." *Id.* at 309

Similarly, in *Cairns v. Franklin Mint Co.*, the Ninth Circuit affirmed the dismissal of Princess Diana's estate's trademark claims arising out of the defendants' use of her name and likeness to sell jewelry, plates, and dolls, and to advertise these products. 292 F.3d at 1151. The court concluded that these uses of her name and likeness were merely descriptive of the products, and did not imply any endorsement. *Id.* at 1150. As such, "use of her name did not implicate the source-identification purpose of trademark protection," and none of defendants' advertisements claimed that the products were endorsed by the estate. *Id.*

Here, the first two prongs of the *New Kids* test can quickly be disposed of. The Artists' names and likenesses were used to identify them just as they originally appeared on the *Rolling Stone* Covers, and no other use was made. *See Cairns*, 292 F.3d at 1154 (where "the description of the defendant's product depends on the description of the plaintiffs' product, more use of the plaintiffs' trademark is 'reasonably necessary' to identify the plaintiffs' product").

Rolling Stone also easily satisfies the third prong for nominative fair use. As discussed in the previous section, the magazine's use of the Artists' names and

MOTION TO DISMISS
DWT 13465533V9 3770077-000047

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

images on the Covers is insufficient to affirmatively and explicitly show sponsorship or endorsement by any of the Artists of the RS Promotional Items. *Cairns,* 292 F.3d at 1150 ("Defendants' use of the image of Princess Diana on their products and the words "Diana, Princess of Wales" to *describe* their products does not imply endorsement by plaintiffs") (emphasis in original).

Moreover, where, as here, Rolling Stone prominently displays its own mark on the products, thereby making clear that it is the source of the product in question, the use of plaintiffs' trademark cannot – as a matter of law – cause confusion as to the source of the product.  Instructive is the Seventh Circuit's decision in *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 639-640 (7th Cir. 2001).  There, the *Chicago Tribune* published a series of front page celebrations of the Chicago Bulls' sixth National Basketball Association title that included plaintiffs' trademark, "The Joy of Six."  The Tribune then republished its front pages on promotional memorabilia, including t-shirts, posters, and plaques.  Noting, as here, that the defendants' "distinctive masthead" appeared prominently on each piece of memorabilia and appeared on the product's tags "plainly indicating the Tribune was the source," the court had no trouble concluding that the use of the plaintiff's mark was a fair use and not actionable.  *Id.* at 639-640.  *See also Universal City Studios v. Ideal Publishing Corp.,* 195 U.S.P.Q. 761 (S.D.N.Y. 1977) (fan magazine's use of plaintiff's mark not actionable because no confusion as to the source of the magazine because the cover bore defendants' own "Teen Beat" trademark).

Just as in *Packman*, the strength of *Rolling Stone*'s distinctive trademark that is emblazoned on every item at issue, including on the t-shirts' inside label and attached tags, unmistakably identifies the source of the products.  This is all the more true because consumers understand that celebrities photographed on a cover of a magazine do not necessarily imply they endorse the magazine or its contents.  *See Abdul-Jabbar,* 85 F.3d at 413 (distinguishing television ads from magazines which

MOTION TO DISMISS
DWT 13465533V9 3770077-000047

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"commonly use celebrities' names and photographs without making endorsement contracts, so the public does not infer and endorsement agreement from the use").

In short, Rolling Stone's use of their covers to promote the magazine, which contained the names and likenesses of certain artists, is a classic example of a nominative fair use, and thus is not actionable.

**D.    Plaintiffs' Trademark Claims Fail For Additional Independent Reasons**

**1.    Plaintiffs' Infringement Claim Should Be Dismissed**

Section 1114 of the Lanham Act applies only to the infringement of a registered mark.  15 U.S.C. § 1114(1)(a).  *Sebastian Intern., Inc. v. Russolillo*, 186 F. Supp. 2d 1055, 1063 (C.D. Cal. 2000).  Here, not only is the Complaint wholly bereft of allegations concerning the registration of any of the Artists' trademarks, it does not identify which trademarks are even at issue.  Paragraph 37 of the Complaint alleges only in the broadest, most conclusory way, that "Defendants have engaged in the unauthorized use in commerce of reproductions, counterfeits, copies and/or imitations of the Artists' registered trademarks," but the Complaint defines "Artists" as all of the three plaintiffs' hundreds of clients (Compl. ¶ 16), and not only Nirvana, Run-D.M.C., Kurt Cobain, and Beyoncé, and it never identifies what trademarks are registered or at issue.  As such, plaintiffs' failure to allege any trademark registrations is fatal to their Section 1114 claim.

**2.    Plaintiffs' False Advertising Claim Should Be Dismissed**

A false advertising claim under 15 U.S.C. § 1125(a)(1)(B) is different than a false endorsement claim under 15 U.S.C. § 1125(a)(1)(A).  *Waits*, 978 F.2d at 1108 (the two claims are distinguishable, they involve "different prongs of section 43(a) and implicate distinct interests").  To allege a claim for "false advertising," there must be an allegation that plaintiff suffered a commercial injury based upon a misrepresentation about a product, and also that the injury was 'competitive' i.e. harmful to the plaintiff's ability to compete with the defendant." *Jack Russell Terrier Network of Northern Ca. v. American Kennel Club, Inc.*, 407 F.3d 1027,

22

MOTION TO DISMISS
DWT 13465533V9 3770077-000047

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1037 (9th Cir. 2005); *Kournikova v. General Media Communications Inc.*, 278 F. Supp. 2d 1111, 1128-1129 (C.D. Cal. 2003).

Here, plaintiffs' false advertising claim is defective because it fails to allege that the RS Promotional Items caused plaintiffs or the Artists any competitive injury. Mere allegation of the unauthorized use of a celebrity's "name and identity ... is not sufficient to constitute a 'competitive injury' for standing under a false advertising claim." *Kournikova,* 278 F. Supp. 2d at 1119.  Instead, a plaintiff must allege some lost sales or other financial loss as a result of the unauthorized use of his or her name and likeness. *Id.*  In this case, plaintiffs' miscast false advertisement claim is not supported by any allegation of financial loss, which is fatal to their false advertising claim.

Indeed, plaintiffs label their First Claim For Relief as one for "False Advertising," but their allegations in support of this claim sound in false endorsement. *See* Compl. ¶¶ 29-30.  Plaintiffs allege that defendants' uses of the Artists' names on the RS Promotional Items allegedly "mislead the public and misrepresent and create the false impression that the [RS] Merchandise was authorized, approved, endorsed, sponsored, connected or affiliated with the respective Artists." Compl. ¶ 29.  Accordingly, to the degree that plaintiffs' attempt to assert a false advertisement claim, it should be dismissed.  *Waits*, 978 F.2d at 1110 (celebrity alleging that advertisement created false impression of endorsement could only bring claim for false endorsement and not false advertisement); *Kournikova*, 278 F. Supp. 2d at1128-1129 (dismissing celebrity tennis player's false advertisement claim against magazine publisher based on allegation that magazine's false identification of plaintiff as subject of nude photograph sounded only in false endorsement).

### 3.    Plaintiffs' Dilution Claim Should Be Dismissed

To allege a claim for trademark dilution, a plaintiff must allege that (1) its mark is famous; (2) the defendant is making commercial use of the mark in

23

MOTION TO DISMISS
DWT 13465533V9 3770077-000047

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

commerce; (3) the defendant's use began after the plaintiffs' mark became famous; and (4) the defendant's use presents a likelihood of dilution of the distinctive value of the mark." *Thane Intern., Inc. v. Trek Bicycle Corp*., 305 F.3d 894, 907 (9th Cir. 2002).

Plaintiffs' dilution claim fails for two reasons.  First, the RS Promotional Items are expressive non-commercial works that are being sold to promote *Rolling Stone* magazine.  Yet, "a claim of dilution applies only to purely commercial speech." *Mattel*, 353 F.3d at 812; *Burnett,* 491 F. Supp. 2d at 974 (dismissing dilution claim against television show because "dilution action only applies to purely commercial speech").  Moreover, plaintiffs have not, because they cannot, alleged that republication of the Covers on the RS Promotional Items actually diluted any of the Artists' trademarks.  "Dilution" is defined as the "gradual 'whittling away' of a trademark's value." *Playboy Enter., Inc. v. Welles,* 279 F.3d 796, 805 (9th Cir. 2002). The Supreme Court has made clear that a dilution claim requires "actual dilution, rather than a likelihood of dilution." *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 433, 123 S. Ct. 1115, 1124, 155 L. Ed. 2d 1 (2003).

In this case, the RS Promotional Items used the Artists' marks only in a descriptive and truthful manner, accurately identifying that they had appeared on the cover of *Rolling Stone*.  Because this use is not in any way inaccurate, nor does it undermine the ability of the Artists otherwise to identify themselves, there can be no diminishment or dilution of their marks. *See Welles,* 279 F.3d at 806 (truthful use of plaintiff's trademark "playmate of the year" on defendant's website "merely identifi[ed] trademark holder's product" because "such uses cause no harm").  Just as the initial publication of the Covers featuring the Artists did not cause dilution to their marks, plaintiffs have not alleged, nor could they, that Rolling Stone's use of the Artists' marks on the RS Promotional Items actually diluted their marks. *See Moseley*, 537 U.S. at 434 (dismissing dilution claim given the "complete absence of evidence of any lessening of the capacity of the VICTORIA'S SECRET mark to

24

MOTION TO DISMISS
DWT 13465533V9 3770077-000047

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

identify and distinguish goods or services sold in Victoria's Secret stores or advertised in its catalogs").

## **CONCLUSION**

For the reasons stated above, defendants respectfully request that the Court dismiss plaintiffs' three federal Lanham Act claims, with prejudice, and decline to exercise supplemental jurisdiction over plaintiffs remaining state law claims, and dismiss them without prejudice.

DATED:  October 30, 2009                   DAVIS WRIGHT TREMAINE  LLP
                                            ALONZO WICKERS IV

                                            By:_____/s/_____
                                                   Alonzo Wickers IV

MOTION TO DISMISS
DWT 13465533V9 3770077-000047

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899